**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Christina Krueger,

Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-1036 ADM/RLE

St. Mary's EMS, Inc., and St. Mary's Regional Health Center,

Defendants.

---

Thomas D. Fiebiger, Esq., Ohnstad Twichell, West Fargo, ND, and Bruce A. Schoenwald, Esq., Stefanson, Plamback & Foss, Moorhead, MN, appeared for and on behalf of Plaintiff.

Sally L. Tarnowski, Esq., Johnson, Killen & Seiler, Duluth, MN, appeared for and on behalf of Defendants.

---

## I. INTRODUCTION

On July 25, 2001, this matter came on for hearing before the undersigned United States District Court Judge pursuant to Defendants' Motion for Summary Judgment [Doc. No. 19]. For the reasons set forth below, Defendants' Summary Judgment Motion is granted in part and denied in part.

## II. BACKGROUND[1]

Plaintiff Christina Krueger ("Krueger") brings a number of employment claims against Defendants, St. Mary's EMS, Inc. ("EMS") and St. Mary's Regional Health Center ("St. Mary's"). EMS is an ambulance service owned by St. Mary's. Krueger Aff. ¶ 2. EMS hired Krueger as a

[1] As required on summary judgment, the facts are viewed in a light most favorable to the non-movant. *Bogren v. Minnesota*, 336 F.3d 399, 403 (8th Cir. 2000).

SEP 25 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

paramedic on February 13, 1996. *Id.*

In late 1996 or early 1997, she began dating her supervisor, Tim Meyer ("Meyer"). *Id.* ¶¶ 4, 5. Krueger and Meyer are affianced. *Id.* In 1997, Krueger brought a sexual harassment complaint against other EMS paramedics. *Id.* ¶ 6. EMS asked Tom Klyve ("Klyve"), a former owner of the ambulance service, to investigate the charges. Krueger Aff. ¶ 8. EMS wrote a letter to Krueger in August of 1997 stating that most of her allegations had been substantiated. *Id.* Ex. B. As a result of the investigation, two EMS employees were discharged and another was suspended. *Id.* Ex. B. After the investigation, EMS demoted Meyer from his supervisor position and replaced him with Klyve. *Id.* at ¶ 7.

Male employees ostracised Krueger after the first harassment complaint. *See* Meyer Aff. ¶ 12. The new supervisor, Klyve, treated Krueger differently than her male coworkers. *See* Krueger Aff. ¶ 13. While he gave male paramedics extra assignments that resulted in additional pay, Krueger was not assigned these duties. *Id.* ¶ 18; Meyer Aff. ¶ 13. In 1998, Klyve scheduled male paramedics, and not Krueger, to work a large music festival on the basis that the concert grounds were dirty and full of drunks and he did not think she wanted to be there. Krueger Aff. ¶ 19. When she told him that she indeed had wanted to work the event, Klyve responded that the scheduling was an oversight. *Id.* Klyve "slammed doors and drawers" in Krueger's presence and ignored her. *Id.*; Meyer Aff. ¶ 13. In January of 1999, Klyve "backed" Krueger up to an ambulance, shoved a stopwatch in her face and berated her about taking too long on one of her calls. Krueger Aff. ¶ 15. During this incident Klyve was "shaking and all red," which frightened Krueger. *Id.* Krueger reported this incident to Jean Evans ("Evans") in St. Mary's human resources department. *Id.* at ¶ 15.

In May of 1998, Krueger voluntarily moved to part time and EMS cancelled her health insurance. *Id.* ¶¶ 16, 20. Despite the cancellation, pay deductions for the insurance were taken for another 11 months. *Id.* ¶ 20. Krueger became concerned about the comparison of her salary with other EMS workers. On January 8, 1999, Krueger sent Klyve and Evans a letter asserting that "new paramedics with little or no experience are paid the same, even more than me (sic)." *Id.* ¶ 12; Ex. C. Krueger received a pay raise after her complaint, but EMS still paid her less than other male paramedics, such as Bob Pary and Mike Reardon. *Id.* ¶ 14.

On April 7, 1999, Krueger, Meyer, and other employees sued EMS under the Fair Labor Standards Act ("FLSA") to recoup unpaid overtime wages. *Id.* ¶ 21. Meyer Aff. ¶ 10. On April 22, 1999, Dr. Mark Lindquist ("Lindquist"), EMS's Medical Director, wrote a letter to employees notifying them that he was aware of the lawsuit. Krueger Aff. ¶ 22; Ex. D. His letter states, "if I, as a medical director, find it necessary to commend, instruct, discipline or terminate any employee as a result of his or her performance as an extender of my medical license, I will continue to do so, and I am grateful that such decisions have been repeatedly upheld in court decisions." *Id.* ¶ D. Krueger believed this letter was intimidating and threatening. In February of 2000, the overtime wage litigation ended when the parties reached a settlement agreement ("Agreement"). Krueger Aff. Ex. K.

In February of 1999, Krueger voluntarily moved to "casual employee" status. *Id.* ¶ 16. Sometime thereafter, David Langworthy ("Langworthy") replaced Klyve as EMS manager. *Id.* ¶ 23. Krueger then requested Langworthy to make her a full-time employee or increase her hours. *Id.* Langworthy told her in response that St. Mary's would rather use less experienced paramedics for financial reasons. *Id.* When Krueger responded that it did not make sense to

sacrifice experience for saving money, Langworthy stated he did not understand it either. Krueger Aff. ¶ 23. He then stated he knew there was a lawsuit going on and mumbled something about sexual harassment in the past. *Id.*

On November 6, 1999, Krueger was on duty at EMS when a call came in. Krueger Dep. at 125. Driving the EMS quick response vehicle ("QRV"), Krueger proceeded to the call's location. *Id.* at 126, 128. Summer Larson ("Larson") was an emergency medical technician ("EMT") and Krueger's partner on that day. *Id.* at 130. EMTs typically have less training then paramedics. *Id.* Larson responded to the call by driving the ambulance from EMS to the call site. *Id.* at 130-31. While en route driving the QRV, Krueger missed a turn. *See* Krueger Dep. at 131. When Krueger realized she was off track, she called back to the EMS dispatch and asked for directions. *Id.* at 132. Dispatch told Krueger she had likely gone too far and it could not provide her further information due to another situation. *Id.* at 133. Krueger then communicated with Larson, who had already arrived at the scene. *Id.* at 133-34. Larson told Krueger they were not needed at the call and said they were "cancelled." *Id.* at 135. Krueger set her course back to EMS. *See* Krueger Dep. at 136. Larson subsequently called Krueger and requested that she respond to the call. Def.'s Ex. E at 2. When Krueger arrived at the call scene, Larson was walking along the road while two patients were in the ambulance unattended. *Id.* Ex. E at 2. Two days later, Larson submitted a complaint to Defendants regarding Krueger's actions during the call. *See* Def.'s Ex. G.

Within a week, Defendants terminated Krueger's employment. *Id.* Ex. F. Langworthy wrote Krueger a letter stating that Dr. Lindquist "requested that you no longer be allowed to work under his medical license as a paramedic." *Id.* Ex. F. The letter states that this is because: (1)

Krueger broke policy by responding to an out-of-town call in the QRV; (2) turned in trip sheets that were incomplete; and "most seriously," (3) abandoned the patients injured in the November 6th accident. *Id.* Ex. F.

## III. DISCUSSION

Krueger makes several claims against EMS and St. Mary's. Krueger alleges violations of the Minnesota Human Rights Act ("MHRA"), Minn. Stat. §§ 363.01-363.20, for: (1) discriminatory discharge; (2) discriminating against her with respect to compensation, conditions, facilities or privileges of employment; and (3) reprisal. She also asserts claims under the Equal Pay Act ("EPA") for wage discrimination and a FLSA retaliation claim.

### A. MHRA

Krueger lacks direct evidence of discrimination in this case. MHRA claims that are not supported by direct evidence are analyzed under the *McDonnell Douglas* burden shifting formula. *See Feges v. Perkins Rest., Inc.*, 483 N.W.2d 701, 710 (Minn. 1992).

### 1. Discharge

Krueger claims that she was fired from her position at EMS because of her sex in violation of the MHRA. Minn. Stat. § 363.03, subd. 1(2)(b). Under the *McDonnell Douglas* burden shifting analysis in the termination context, Krueger must first make out a prima facie case by "proving that she: (1) is a member of the protected class; (2) was qualified for the position from which she was discharged; and (3) was replaced by a non-member of the protected class." *Feges*, 483 N.W.2d at 710. Defendants are then required to proffer a non-discriminatory reason why Krueger was fired that would "allow a trier of fact rationally to conclude that the employment decision has not been motivated by discriminatory animus." *Id.* If this is

accomplished, Krueger then must produce evidence "that it is more likely than not that the proffered reason is (1) a pretext for discrimination or (2) not worthy of belief." *Id.*

Defendants concede for purposes of the motion that Krueger meets the first two elements of the prima facie case. The third element of the prima facie case, that a plaintiff be "replaced by a non-member of the protected class" is not always stringently applied. Where there is a significant lapse in the time between the termination and the replacement's hiring, summary judgment may not be proper. *See Johnson v. Baptist Med. Ctr.*, 97 F.3d 1070, 1072 (8th Cir. 1996) (holding that prima facie case may be satisfied by a showing that position remained open); *Howard v. Roadway Express, Inc.*, 726 F.2d 1529, 1535 (11th Cir. 1984). Here, Defendants admit they did not advertise for Krueger's replacement until a year after her termination. Def.'s Supp. Mem. at 7. Moreover, the "law imposes no per se requirement" on a plaintiff to show that she was replaced by someone outside her class. *Walker v. St. Anthony's Med. Ctr.*, 881 F.2d 554, 558 (8th Cir. 1989); *Pullar v. Indep. Sch. Dist. No. 701*, 582 N.W.2d 273, 277 (Minn. Ct. App. 1998). Instead, these cases indicate the proper inquiry is whether the plaintiff can show that her discharge occurred in "circumstances which allow the court to infer unlawful discrimination." *Walker*, 811 F.2d at 558; *accord Rorie v. United Parcel Serv., Inc.*, 151 F.3d 757, 760 (8th Cir. 1998); *Adams v. West Publ'g Co.*, 812 F.Supp. 925, 932 (D. Minn. 1993). Given the time delay in replacing Krueger and the surrounding circumstances, Krueger has established a prima facie case.

The next step requires a defendant to set forth a legitimate reason for the termination. *Feges*, 483 N.W.2d at 710. Defendants assert that Krueger acted improperly during the November 6, 1999 incident. Based on Krueger's alleged abandonment of patients during a call,

Dr. Lindquist refused to allow Krueger to work under his medical license. Def.'s Ex. C.

Since Defendants have met their burden, Krueger must show that this reason is pretextual or not worthy of belief. *Feges*, 483 N.W.2d at 710. Where a plaintiff can demonstrate that she was dismissed for conduct that other males engaged in and were not terminated, such evidence is a sufficient showing of pretext under the *McDonnell Douglas* formula. *See Keathley v. Ameritech Corp.*, 187 F.3d 915, 922-23 (8th Cir. 1999); *Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 202 (3d Cir. 1996). Meyer, who once managed EMS and worked there until July of 1999, avers that males were not fired for the conduct that EMS cites was the reason for Krueger's termination. *See* Meyer Aff. ¶ 11. EMS did not discipline male paramedics involved in situations like Krueger's incident, where an EMT cancelled the paramedics during a call. *See* Krueger Aff. ¶ 31. There is evidence that each of the three reasons specified for Krueger's termination in the letter involved occurrences that had also happened to male paramedics and did not result in their discharge. *See* Meyer Aff. ¶ 11. When viewed in the requisite light most favorable to Krueger, the evidence demonstrates a genuine issue of material fact regarding pretext. Accordingly, summary judgment is not appropriate on the MHRA discriminatory discharge claim.

**2. Other Discriminatory Conduct**

Krueger's MHRA claims include allegations that Defendants discriminated against her in other ways as well. The MHRA makes it illegal for an employer "to discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges or employment" on the basis of sex. Minn. Stat. § 363.03, subd. 1(2)(c). Krueger alleges that Defendants: (1) failed to provide sleeping quarters for women paramedics as had

been promised after the sexual harassment complaint; (2) gave male employees, to her exclusion, extra duty assignments resulting in additional pay; and (3) continued withholding health insurance payroll deductions after cancelling her insurance. Defendants assert that these allegations should be dismissed because they are outside of the statute of limitations and they are not "adverse employment actions."

Plaintiff's three allegations fall under the MHRA prohibitions because the MHRA makes discrimination in pay and facilities between men and women illegal. Minn. Stat. § 363.03, subd. 1(2)(c). A MHRA unfair discriminatory practice claim must be brought within one year of the practice. *Id.* § 363.06, subd. 3. Krueger's claim was filed on April 5, 2000, barring claims for actions that occurred prior to April 5, 1999. There are questions of fact as to whether Krueger's allegations are within the statute of limitations under the continuing violation doctrine. *See Ashley v. Boyle's Famous Corned Beef Co.*, 66 F.3d 164, 167-68 (8th Cir. 1995). Krueger presents evidence that separate sleeping quarters for women were never developed during her time at EMS, which included time within the statute of limitations. *See* Krueger Aff. ¶ 17. The allegations that Klyve passed Krueger over for extra projects and the resulting additional income partially falls within the statute of limitations as well. *Id.* ¶ 18. There are also questions of fact as to whether the withholding of her health insurance deductions was within the statute of limitations. *Id.* ¶ 20. Summary judgment is denied.[2]

---

[2] Krueger's arguments concerning other factual allegations of discrimination are unsupported because there is no individual analysis of Defendants' alleged actions. Krueger's cryptic attempt to put together a hostile work environment claim encompassing miscellaneous incidents fails. A prima facie case of hostile environment discrimination under the MHRA requires a plaintiff to show, among other things, that the "harassment alleged must be sufficiently severe and pervasive to create an objectively hostile or abusive work environment." *C.L.D. v.*

**3. Reprisal**

Krueger's final MHRA claim is for reprisal. Minn. Stat. § 363.03, subd. 7. She asserts that Defendants terminated her employment and took adverse employment actions against her in response to her earlier sexual harassment complaint and the FLSA lawsuit. Under the MHRA, a plaintiff first must prove that: "(1) she engaged in statutorily protected activity; (2) an adverse employment action was taken against her, and (3) a causal connection between the two events." *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1104 (8th Cir. 2000); *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 102 (Minn. 1999) (internal citations omitted).

Defendants claim that Krueger cannot show a causal connection between the protected activity and the termination, asserting that the sexual harassment allegation occurred in 1997 and that the termination occurred two years later. In response, Krueger contends that in 1999, when she asked Langworthy about increasing her hours, he mentioned something about a prior sexual harassment suit as a possible reason why Defendants did not want to give her more hours. *See* Krueger Aff. ¶ 23. This comment is insufficient to bridge the time gap. The significant amount of time that passed between the harassment claim and the termination "weakens the inference of retaliation that arises when a retaliatory act occurs shortly after a complaint." *Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 989 (8th Cir. 1999) (finding a four-month gap insufficient to establish causal connection); *Feltmann v. Sieben,* 108 F.3d 970, 977 (8th Cir. 1997) (holding that a retaliatory discharge plaintiff, fired six months after a complaint, lacked sufficient evidence of a causal link). Moreover, this two-year time gap is reinforced by other evidence refuting any

---

*Wal-Mart Stores, Inc.*, 79 F.Supp.2d 1080, 1087-88 (D. Minn. 1999). Plaintiff has not met this burden.

inference of retaliatory motive. *See id.* After Krueger's complaint of sexual harassment, EMS's investigation substantiated her allegations and EMS disciplined the culpable employees. It is unlikely that, two years later, EMS would retaliate against Krueger for a complaint that EMS itself found legitimate.

As to other adverse actions taken by Defendants in retaliation, Krueger's memorandum merely states that "[i]t is Plaintiff's position that all of the items previously articulated earlier in this brief constitute intimidation, retaliation, or harassment under this statute." Krueger has not attempted to show what other conduct constitutes an adverse employment action or the causal connection. As to the reprisal claim, summary judgment is granted.

**B. EPA**

Krueger also alleges violations of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), contending she was paid less than comparable male paramedics. Defendants ask for summary judgment of this claim on two grounds. First, Defendants proffer that the Agreement bars the claim. Second, Defendants assert the claim should be dismissed because there is no genuine issue of fact that the pay disparity between Krueger and the male paramedics was based on gender.

Krueger's EPA claim is not barred by the Agreement. The Agreement releases Defendants from "any and all 'wage and hour claims' that accrued **prior** to the effective date hereof" (sic). Def.'s Ex. K § 3. The Agreement then contains a section titled "Definition." This states:

> The term "age and hour claims" includes, but shall not be limited to, claims arising under: (a) The Fair Labor Standards Act of 1938, as amended, Chapter 29 U.S.C. 201 et. seq., as related to the payment of minimum and overtime wages;

> (b) The Minnesota Statutes pertaining to the payment of minimum and overtime wages; and (c) Any and all other federal or state statutes or adminstrative regulations or code provisions pertaining to the payment of minimum and overtime wages, interests, costs, liquidated damages and/or attorney fees, all as relating to the payment of wages. **Note: the term "wage and hour claims" <u>does not</u> include claims by Christina Krueger for retaliation or wrongful discharge, which claims said Employee specifically reserves and preserves.**

*Id.* Ex. K § 4 (emphasis added). In the earlier suit, Krueger and her coworkers sued for "unpaid minimum wages" and "unpaid overtime compensation." Complaint at 7, *Meyer v. St. Mary's EMS, Inc.*, No. 99-543 (D. Minn. filed Apr. 7, 1999). Here, Krueger's Equal Pay Act claim is not for either of these wage catagories. Instead, Krueger is claiming that she was not paid as much as her male co-workers. The Agreement does not bar this claim.

Defendants next argue that they have provided a reason for any pay differential. However, such an argument merely articulates an affirmative defense. "[T]o establish a prima facie case of wage discrimination based on unequal pay, a plaintiff must show that the defendant paid male workers more than she was paid for equal work in jobs that required equal skill, effort, and responsibility and were performed under similar conditions." *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 718-19 (8th Cir. 2000) (citations omitted). If a prima facie case is established, the "burden shifts to the defendant to prove the pay differential is based on a factor other than gender." *Id.* Because this is an affirmative defense, the defendant "bears the burden of proof." *Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998) (citations omitted); *EEOC v. State of Del. Dept. of Health and Soc. Servs.*, 865 F.2d 1408, 1414 (3d Cir. 1989). Accordingly, summary judgment of an EPA claim should only be granted "if the record shows that [a defendant] established the defense so clearly that no rational jury could have found to the contrary." 134 F.3d at 799 (quoting 865 F.2d at 1414). Here, questions of fact remain as

to whether any difference in pay between Krueger and her male coworkers is justified. Defendants have not proven their affirmative defense as a matter of law.

### C. FLSA

Krueger's final claim is for retaliation under the FLSA. 29 U.S.C. § 215(a)(3). Krueger alleges she was terminated because of the previous lawsuit she and her coworkers brought against Defendants. Again, a *McDonnell Douglas* burden shifting test is used for FLSA retaliation claims. Defendants ask for summary judgment, claiming that Krueger cannot show its decision to terminate her employment was pretextual. Again, Krueger has created a question of fact as to whether Defendants' reason for her firing was pretextual. Accordingly, summary judgment is denied.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Doc. No. 19] is denied in part and granted in part.

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: September 25, 2001